UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KHALAIRE ALLAH,

                                 Plaintiff,

        v.

SWITZ, Physician Assistant, Sullivan
Correctional Facility; DR. CARL J.
KOENIGSMANN, Medical Chief,
Department of Corr. Services; MICHAEL
HOGAN, Mental Health Dep., OMH,

                                 Defendants.

No. 14-CV-5970 (KMK)

OPINION & ORDER

---

Appearances:

Khalaire Allah
Attica, NY
*Pro Se Plaintiff*

David John Galalis, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Khalaire Allah ("Plaintiff"), an incarcerated individual proceeding pro se, filed

the instant Complaint in the United States District Court for the Northern District of New York

pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act (the "ADA"), 42 U.S.C.

§ 12101, et seq., against a number of Defendants working at the various correctional facilities in

which Plaintiff has been incarcerated.  (*See* Dkt. No. 1.)  On July 28, 2014, Judge Frederick J.

Scullin, Jr. of the Northern District of New York severed and transferred Plaintiff's claims

against Defendant Switz and all claims against Dr. Carl. J. Koenigsmann and Michael Hogan

arising out of Switz's alleged misconduct occurring at Sullivan Correctional Facility to the Southern District of New York.  (*See* Mem. Decision & Order (Dkt. No. 16).)  Before the Court is Switz's, Koenigsmann's, and Hogan's ("Defendants") Motion To Dismiss under Rule 12(b)(6) for failure to state a claim.  (Dkt. No. 33.)  For the following reasons, the Motion is granted in part.

## I.  Background

### A.  Factual Background

Because the bulk of Plaintiff's allegations relate to claims not transferred to the Court, the Court will recite only those allegations necessary to resolving the instant Motion.

Plaintiff suffers from "severe right hand dysfunction."  (Compl. ¶ 2.)[1]  A physician assistant at Wende Correctional Facility, where Plaintiff was committed in November 2009, evaluated Plaintiff's right hand and prescribed medication and wrote a permit for a glove or brace to be worn on the hand to treat pain.  (*See id.* ¶ 3.)  Separately, in December 2009, Plaintiff injured his left pinky finger playing ball during a recreational period at Wende Correctional Facility.  (*See id.* ¶ 6.)  In March 2010, he received "[t]endon graftation surgery" to repair mobility in his left pinky finger, requiring him to wear a cast on his arm for a minimum of seven weeks.  (*Id.* ¶ 10.)  The surgeon also ordered eight weeks of post-surgery occupational therapy on Plaintiff's left pinky finger.  (*See id.* ¶ 12.)  While at Wende Correctional Facility, Plaintiff's therapy sessions were interrupted by his commitment to the special housing unit, where he was told that an escort was unavailable to take him to his sessions.  (*See id.* ¶ 13.)  Plaintiff's brace on his right hand was also confiscated due to its design.  (*See id.* ¶ 14.)  Although Plaintiff was told

---

[1] Citations to paragraph numbers in the Complaint refer to the numbered allegations beginning on page 8 of the Complaint, labeled "Khalaire Allah's Statement of Facts."

by another doctor that she had designed a brace that could accommodate the restrictions imposed in the special housing unit, Plaintiff was transferred to Great Meadow Correctional Facility in June 2010 before receiving the modified brace.  (*See id.* ¶¶ 15–17.)

At Great Meadow Correctional Facility, Plaintiff met with a Dr. Thomas, who ordered occupational therapy, medication, and the use of a brace.  (*See id.* ¶¶ 20–21.)  Although Plaintiff received a wrist wrap and sleeve from Dr. Thomas, he never received the treatment ordered by Dr. Thomas.  (*See id.* ¶¶ 22–23, 25.)  Plaintiff filed a grievance, but did not receive the requested treatment as a result.  (*See id.* ¶¶ 23–24.)  In August 2010, Plaintiff was transferred to Sullivan Correctional Facility, where the allegations pertinent to the claims transferred to this district allegedly arose.  (*See id.* ¶ 25.)

At Sullivan Correctional Facility, Plaintiff met with Defendant Switz, a physician assistant.  (*See id.* ¶ 26.)  Switz did not read Plaintiff's chart or evaluate the severity of Plaintiff's injuries.  (*See id.* ¶ 27.)  Instead, she denied therapy for Plaintiff's left pinky finger and instructed Plaintiff that he needed to complete ten days of self-therapy on his right hand in order to receive occupational therapy.  (*See id.*)  Switz informed Plaintiff that if he was able to move his thumb and index finger within ten days, she would order occupational therapy.  (*See id.*)  Although Plaintiff insisted that the condition of his right hand was more complex, he was disregarded. (*See id.*)  Ten days later, Plaintiff saw Switz again, who determined that because Plaintiff was still unable to move his thumb and index finger, occupational therapy was not warranted.  (*See id.* ¶ 28.)[2]  Plaintiff states that he filed a grievance related to this incident.  (*See id.* ¶ 29.)

---

[2] Defendants assert that Switz "determined that because [P]laintiff could move his thumb and index finger, occupational therapy was not needed."  (*See* Mem. of Law in Supp. of Defs.' Mot. To Dismiss ("Defs.' Mem.") 6 (Dkt. No. 34).)  Plaintiff, in fact, alleges the opposite, that is, that Switz told Plaintiff occupational therapy was not warranted because he could *not* move his thumb and index finger.  (*See id.* ¶¶ 28–29.)

Plaintiff was transferred out of Sullivan Correctional Facility (and out of the Southern District of New York) in October 2010.  (*See id.* ¶ 30.)  He continued to suffer from chronic pain, and he encountered additional pushback and harassment from prison officials who refused to provide him with the necessary treatment and who allegedly retaliated against him for his frequent requests for sick call and for his complaints to prison officials related to his medical treatment.  Plaintiff alleges that as of the filing of the Complaint, he has not received either the brace or the occupational therapy ordered by a number of doctors, which he alleges has caused the condition in his right hand to worsen.  (*See id.* ¶ 84.)  Plaintiff also alleges that the lack of occupational therapy on his left pinky finger has limited its motion.  (*See id.*)  He alleges also that that the abuse of various prison officials has had a "profound psychological effect" on him, and that as a result, he attempted self-harm, which resulted in him being transferred to the Office of Mental Health for observation.  (*Id.* ¶ 85.)

In his Complaint, Plaintiff also includes a claim under the ADA.  (*See id.* at 18.)[3] Though Plaintiff relies primarily on the allegations raised in the statement of facts appended to his § 1983 complaint, Plaintiff makes additional allegations with respect to Defendants. Specifically, Plaintiff alleges that his right hand is disabled as the result of a nerve injury suffered in the 1990s, impairing the "general function of [his] dominant hand."  (*See id.* at 19.) Plaintiff also alleges that the tendon graftation procedure performed on his left pinky finger, administered to repair mobility and general function of his finger, qualifies as a disability.  (*See id.* at 20.)  With respect to Defendant Carl Koenigsmann, the Chief Medical Officer at the New York State Department of Corrections and Community Supervision ("DOCCS"), Plaintiff alleges

---

[3] The Court cites here to the ECF-generated page numbers in the upper right-hand corner of the pages.

that "[a]s the Chief Medical Staff for DOCCS, he has a responsibility under the 8th

[A]mend[ment] of [the Constitution] to ensure that medical treatment is provided," and that such

responsibility includes the provision of "[e]ffective pain meds, [occupational therapy,] and a

glove/brace (as ordered by several ortho specialist[s]) to treat a severe neuropathy condition."

(*Id.* at 21.)  Against Michael Hogan, the Former Commissioner of the New York State Office of

Mental Health, Plaintiff alleges that "chronic pain can and has in fact trigger[ed] mental health

issues and those matters were not properly addressed through mental health services."  (*Id.* at

22.)  And, as to Switz, Plaintiff alleges that she "refused to review [Plaintiff's] chart and learn of

the extent of [his] injures," and, instead, "placed impossible stipulations[] as a condition for

[him] to receive adequate treatment for [his] disabilities."  (*Id.*)

Plaintiff identifies five causes of action under § 1983: violation of his Eighth Amendment

rights for failure of Defendants to provide adequate medical treatment and for cruel and unusual

punishment; violation of his Fourteenth Amendment due process rights; violation of his First

Amendment right to be free from retaliation for filing grievances; violation of his Fourth

Amendment right against unreasonable searches and seizures; and violation of his Sixth

Amendment right to an impartial hearing.  (*See id.* at 16.)  For relief, Plaintiff seeks $7 million

and injunctive and declaratory relief.  (*See id.* at 17.)  For his claim under the ADA, Plaintiff

seeks injunctive relief ordering Defendants Van Buren (not a party to the claims transferred to

the Southern District) and Koenigsmann to arrange for Plaintiff to be examined by an orthopedic

specialist for evaluation and diagnosis.  (*See id.* at 23.)

B.  Procedural Background

Plaintiff filed his initial Complaint on July 15, 2013, naming 27 defendants from the

various correctional facilities in which he resided at the time his causes of action arose.  (*See*

Dkt. No. 1.)  The Complaint was filed in the United States District Court for the Northern

District of New York.  (*See id.*)  Plaintiff filed a simultaneous Motion for Preliminary Injunction,

seeking to prevent the enforcement of a draft DOCCS directive, (*see* Dkt. No. 2), and also moved

for in forma pauperis status, (*see* Dkt. No. 3).  Two days later, Judge Scullin entered an order

directing Plaintiff to pay the full $400 filing fee or submit a corrected in forma pauperis

application within 30 days and instructed Plaintiff that failure to comply would result in

dismissal of his case without prejudice.  (*See* Dkt. No. 5.)  On September 27, 2013, Judge Scullin

entered judgment dismissing the case without prejudice for failure to comply with the order.

(*See* Dkt. No. 6.)  Shortly thereafter, Plaintiff filed a Motion to Reopen the Case and provided

the $400 filing fee.  (*See* Dkt. Nos. 7, 8.)  Judge Scullin granted the Motion on July 28, 2014.

(*See* Dkt. No. 16.)  In the Order, Judge Scullin severed the claims against Switz, Koenigsmann,

and Hogan arising out of Plaintiff's stay at Sullivan Correctional Facility, which is in the

Southern District of New York, and transferred those claims to this Court.  (*See id.* at 9–10.)

Specifically, Judge Scullin determined that it was

> appropriate to sever Plaintiff's claims against Defendant Switz, as well as any
> claims asserted against Defendants Koenigsmann and Hogan that arise out of
> wrongdoing that occurred, if at all, at Sullivan [Correctional Facility], from this
> complaint and . . . transfer[] venue of those claims to the Southern District in the
> interests of justice and judicial efficiency.

(*Id.* at 9.)

After the claims were transferred to this Court, on February 19, 2016, Defendants

requested leave to file a motion to dismiss.  (*See* Dkt. No. 31.)  Leave was granted shortly

thereafter.  (*See* Dkt. No. 32.)  On April 1, 2016, Defendants filed their Motion To Dismiss and

accompanying papers, arguing that the Complaint should be dismissed because Plaintiff failed to

exhaust his administrative remedies, Plaintiff failed to state a claim for deliberate indifference to

a serious medical need against Switz, Plaintiff failed to allege that Koenigsmann or Hogan were personally involved in any constitutional violations arising out of Plaintiff's treatment at Sullivan Correctional Facility, and all Defendants are entitled to qualified immunity.  (*See* Dkt. Nos. 33–37.)  Plaintiff did not file an opposition to the Motion, and on May 24, 2016, Defendants indicated that they did not intend to file a reply brief.  (*See* Dkt. No. 38.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common

7

sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves

8

regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B.  Analysis

Defendants argue that Plaintiff's claims must be dismissed because he has failed to exhaust his administrative remedies, he has failed to state a claim under § 1983, and Defendants are entitled to qualified immunity.  (*See* Defs.' Mem. 3–11.)  The Court will address each argument in turn, as needed.

1.  Administrative Exhaustion

The Prison Litigation Reform Act (the "PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all personal incidents while in prison, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes"); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (same), and includes actions for monetary damages, *Booth v. Churner*, 532 U.S. 731, 741 (2001).  "[A]dministrative exhaustion is not a jurisdictional predicate," but, rather, "failure to exhaust is an affirmative defense."  *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citation omitted).  Accordingly, "defendants bear the burden of proof."  *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003); *see also Miller v. Bailey*, No. 05-CV-5493, 2008 WL 1787692, at *3 (E.D.N.Y. Apr. 17, 2008) (explaining that the exhaustion requirement "must be pleaded and proved by a defendant" (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007))).

Although "nonexhaustion should be resolved as early as possible by the [C]ourt," *McCoy*, 255 F. Supp. 2d at 248, the Court "may only grant a motion to dismiss based on failure to exhaust if non-exhaustion is clear from the face of the complaint," *Rodriguez v. Warden, Metro. Corr. Facility*, No. 13-CV-3643, 2015 WL 857817, at *3 (S.D.N.Y. Feb. 27, 2015); *see also McCoy*, 255 F. Supp. 2d at 249 ("[I]f, as is usually the case, it is not clear from the face of the complaint whether the plaintiff exhausted, a Rule 12(b)(6) motion is not the proper vehicle."). Where the failure to exhaust is not apparent from the face of the complaint, "a defendant's motion should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward question[] about the plaintiff's efforts to exhaust," *Dawkins v. Jones*, No. 03-CV-68, 2004 WL 574726, at *1 (S.D.N.Y. Mar. 22, 2004), provided that the pro se plaintiff has been "given 'unequivocal notice' of his obligation to submit evidentiary materials and an opportunity to do so," *Scott v. Gardner*, 287 F. Supp. 2d 477, 485 (S.D.N.Y. 2003) (quoting *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983)).

Here, Defendants support their argument that Plaintiff has failed to exhaust by submitting a declaration and exhibit showing that Plaintiff did not file a grievance related to his claims against Switz for his treatment at Sullivan Correctional Facility.  (*See* Decl. of Karen Bellamy ¶¶ 4–5 (Dkt. No. 35); Decl. of Karen Bellamy Ex. A (Dkt. No. 35).)  Defendants argue that their Motion need not be converted into a motion for summary judgment because the declaration and exhibit "consist of documents incorporated by reference in the [C]omplaint."  (Defs.' Mem. 4 n.2.)  This assertion is unfounded—Plaintiff makes no reference to any of the documents attached by Defendants in support of their Motion.  To hold otherwise, and thereby allow a defendant to prevail on a motion to dismiss against an inmate plaintiff by attaching documents

showing nonexhaustion, would be contrary to case law holding that the failure to exhaust must be clear on the face of the complaint, or else the Court must convert the motion into one for summary judgment.  Moreover, the case cited by Defendants, *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011), does nothing to support their argument, as that case merely reaffirmed that "[p]laintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on a 12(b)(6) motion."  *Id.* at 422 (alteration and internal quotation marks omitted).  Exhaustion is not "integral" to Plaintiff's claims—it is an affirmative defense that Defendants bear the burden of proving.  Plaintiff alleges that while at Sullivan Correctional Facility, he "filed a grievance and wrote other complain[t]s to Central [O]ffice in Albany, NY."  (Compl. ¶ 29.)  This gratuitous allegation is more than sufficient to withstand a motion to dismiss for failure to exhaust.

Given that Defendants specifically stated that "conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary," (Defs.' Mem. 4 n.2), the Court is not inclined to treat the instant Motion as one for summary judgment, notwithstanding that Defendants provided Plaintiff with notice pursuant to Local Rule 12.1 that the Motion may be converted into a motion for summary judgment, (*see* Local Rule 12.1 Notice (Dkt. No. 36)).  *See also Scott*, 287 F. Supp. 2d at 485–86 (converting a motion to dismiss into a motion for summary judgment where the defendants filed a Local Rule 12.1 Notice alerting the plaintiff to the possibility of conversion).  However, as is the normal procedure in such cases, the Court will permit limited discovery on the issue of exhaustion and allow Defendants to refile their Motion as one for summary judgment.  *See Stevens v. City of New York*, No. 12-CV-1918, 2012 WL 4948051, at *7 (S.D.N.Y. Oct. 11, 2012) (permitting limited discovery on issue of

11

exhaustion); *Dawkins*, 2004 WL 574726, at *1 (denying motion to dismiss without prejudice and permitting the defendants to refile as a motion for summary judgment on the issue of exhaustion).  As set forth below, if Plaintiff chooses to amend his Complaint, the Parties are permitted to engage in discovery limited to the issue of exhaustion.[4]

### 2.  Failure to State a Claim

Defendants move on the additional ground that Plaintiff has failed to state a claim under § 1983 against any of Defendants.  With respect to Switz, Defendants argue that Plaintiff has failed to adequately allege the elements of an Eighth Amendment claim for deliberate indifference to serious medical needs.  (*See* Defs.' Mem. 4.)  With regard to Koenigsmann and Hogan, Defendants argue that Plaintiff has failed to allege the personal involvement of either Defendant in the alleged deprivation of Plaintiff's rights.  (*See id.* at 7.)

As an initial matter, the Court agrees with Defendants' implicit assertion that the only § 1983 claims at issue in this case are claims under the Eighth Amendment.  Plaintiff raised a Fourteenth Amendment due process claim in his Complaint, but aside from the Fourteenth Amendment's function in incorporating the Eighth Amendment against states and their agents, *see Robinson v. California*, 370 U.S. 660, 666–67 (1962), the Court sees nothing in the allegations related to Plaintiff's stay at Sullivan Correctional Facility that would implicate due process, and as Plaintiff has not responded to the Motion, the Court has no way to discern what

---

[4] It is unclear whether Title II ADA claims, like the one raised here, are subject to an administrative exhaustion requirement.  *See Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 170 (2d Cir. 2013) ("[A]lthough plaintiffs filing suit under Title I must first exhaust administrative remedies, it appears that those filing suit under Title II need not do so, although we find a conclusion on this point unnecessary to decide this case." (footnote omitted)); *see also Volpe v. N.Y.C. Dep't of Educ.*, — F. Supp. 3d —, 2016 WL 3910667, at *7 (S.D.N.Y. July 14, 2016) ("The Second Circuit has not decided the issue, but has suggested that Title II may not require exhaustion." (internal quotation marks omitted)).  The Court expresses no opinion on this issue at this time.

additional claims Plaintiff might have intended to bring here.  Plaintiff's claim for retaliation in violation of his First Amendment rights plainly relates to his claims arising from his stay at Attica Correctional Facility, (*see* Compl. ¶¶ 63–64), and Plaintiff's Fourth Amendment claim, to the extent he has pleaded one, relates to the alleged searches of Plaintiff's personal belongings while at Attica Correctional Facility, (*see id.* ¶ 67).  But the claims arising from the events that allegedly transpired at Attica Correctional Facility were not transferred to this Court, and are therefore not at issue in the Motion.  Finally, Plaintiff's claim under the Sixth Amendment cannot relate to his stay at Sullivan Correctional Facility because no hearing took place there and no disciplinary charges were imposed on Plaintiff while he was housed there.  Accordingly, only Plaintiff's § 1983 claims under the Eighth Amendment are at issue here.

### a.  Applicable Law

"The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners."  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted).  "There are two elements to a claim of deliberate indifference to a serious medical condition."  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).  "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious."  *Spavone*, 719 F.3d at 138 (internal quotation marks omitted).  Under this objective requirement, a court must inquire first, "whether the prisoner was actually deprived of adequate medical care," and second, "whether the inadequacy in medical care is sufficiently serious."  *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006).  Under the first inquiry, adequate medical care is reasonable care such that "prison officials who act reasonably cannot be found liable."  *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).  Under the second inquiry, the Court examines "how the offending conduct is inadequate and what harm, if any, the inadequacy has

caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280.  As part of this objective

element, "the inmate must show that the conditions, either alone or in combination, pose an

unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir.

2013).  "There is no settled, precise metric to guide a court in its estimation of the seriousness of

a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).

Nevertheless, the Second Circuit has presented "a non-exhaustive list" of factors to consider:

"(1) whether a reasonable doctor or patient would perceive the medical need in question as

'important and worthy of comment or treatment,' (2) whether the medical condition significantly

affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting

*Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Morales v. Fischer*, 46 F.

Supp. 3d 239, 247 (W.D.N.Y. 2014) (same).

      "The second requirement [of an Eighth Amendment deliberate indifference claim] is

subjective: the charged officials must be subjectively reckless in their denial of medical care."

*Spavone*, 719 F.3d at 138.  Here, the inquiry is whether defendants "knew of and disregarded an

excessive risk to [a plaintiff's] health or safety" while "both aware of facts from which the

inference could be drawn that a substantial risk of serious harm existed, and also drew the

inference." *Caiozzo*, 581 F.3d at 72 (alterations and internal quotation marks omitted); *see also*

*Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the

inference.").  "Deliberate indifference is a mental state equivalent to subjective recklessness,"

and it "requires that the charged official act or fail to act while actually aware of a substantial

risk that serious inmate harm will result." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014)

(internal quotation marks omitted); *see also Gladden v. City of New York*, No. 12-CV-7822, 2013

14

WL 4647193, at *2 (S.D.N.Y. Aug. 29, 2013) ("To meet the subjective element, the plaintiff must show that the defendant acted with more than mere negligence, and instead knew of and disregarded an excessive risk to inmate health or safety." (internal quotation marks omitted)).  In contrast, "mere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., . . . a conscious disregard of a substantial risk of serious harm."  *Chance*, 143 F.3d at 703 (internal quotation marks omitted).  Moreover, "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  *Id.*; *see also Crique v. Magill*, No. 12-CV-3345, 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013) ("The mere fact that an inmate feels that he did not receive adequate attention . . . does not constitute deliberate indifference.").

### b.  Application

Although Defendants couch their argument in terms of whether Plaintiff received adequate medical care, (*see* Defs.' Mem. 6–7), their argument relates more to the subjective inquiry under the Eighth Amendment, that is, whether Switz acted with deliberate indifference.  Even assuming occupational therapy was advisable, and assuming that Plaintiff's condition was sufficiently serious so as to implicate the Eighth Amendment, Plaintiff has not adequately alleged facts that, if true, would allow a reasonable trier of fact to conclude that Switz acted with deliberate indifference.  "[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a [§] 1983 claim."  *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see also id.* at 311 ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law,

constitute deliberate indifference.  Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." (citations omitted)).  There is no allegation that Switz failed to offer Plaintiff *any* medical care, rather, the allegation is that Plaintiff did not receive the type of treatment he wanted, i.e., occupational therapy.  But "denial of occupational therapy . . . falls squarely in the realm of disagreements regarding treatment, which do not provide valid bases for Eighth Amendment claims."  *Stevens v. Goord*, 535 F. Supp. 2d 373, 389 (S.D.N.Y. 2008).  And even if occupational therapy was the most appropriate form of treatment, Plaintiff's allegations would still be insufficient.  *See Cruz v. Corizon Health Inc.*, No. 13-CV-2563, 2016 WL 4535040, at *7 (S.D.N.Y. Aug. 29, 2016) ("General 'dissatisfaction with a doctor's chosen course of treatment—even when that course was negligent—is insufficient to establish deliberate indifference.'" (quoting *Zackery v. Mesrobian*, 299 F. App'x 598, 601 (7th Cir. 2008)); *Davidson v. Scully*, 155 F. Supp. 2d 77, 89 n.13 (S.D.N.Y. Aug. 22, 2001) ("[P]oor medical judgment does not constitute deliberate indifference under the Eight [A]mendment.").  Plaintiff alleges no facts evincing anything except a disagreement with the treatment Switz provided—such allegations are insufficient to establish deliberate indifference.[5]

And it is no answer to point to the recommendation made in November 2009 that Plaintiff be offered occupational therapy.  As Defendants point out, disagreements among treating medical professionals do not create an inference of deliberate indifference.  *See Ravenell v. Van der Steeg*, No. 05-CV-4042, 2007 WL 765716, at *6 (S.D.N.Y. Mar. 14, 2007) ("While a plaintiff may be able to state an Eighth Amendment claim where a doctor acts without medical

---

[5] As a formal matter, Plaintiff does not actually allege that Switz's proposed treatment was erroneous.  (*See* Compl. ¶¶ 26–29.)  Nevertheless, as Plaintiff is pro se, the Court interprets the Complaint to make such a claim.

justification, no claim is stated when a doctor disagrees with the professional judgment of another doctor." (internal quotation marks omitted)); *Smith v. Wilson*, No. 12-CV-1152, 2013 WL 5466857, at \*9 (N.D.N.Y. Sept. 30, 2013) ("The fact that [the] [d]efendant . . . reached a different conclusion than . . . any of [the] [p]laintiff's other doctor[s], is not actionable where, as was the case here, [the] [d]efendant['s] . . . determination was based on reasonable medical judgment."); *Williams v. Smith*, No. 02-CV-4558, 2009 WL 2431948, at \*9 (S.D.N.Y. Aug. 10, 2009) ("[A] prison doctor who relies on his medical judgment to modify or disagree with an outside specialist's recommendation of how to treat an inmate is not said to act with deliberate indifference."), *reconsideration denied*, 2009 WL 5103230 (S.D.N.Y. Dec. 23, 2009).

Plaintiff's allegations are therefore insufficient to state a claim for deliberate indifference under the Eighth Amendment against Switz because Plaintiff has not alleged facts showing that Switz acted with deliberate indifference. The Court expresses no opinion at this time as to whether Plaintiff has satisfied the objective element of an Eighth Amendment deliberate indifference claim.

### 3. Lack of Personal Involvement

Defendants next allege that Plaintiff's § 1983 claims against Koenigsmann and Hogan fail because the Complaint does not sufficiently allege their personal involvement in a constitutional violation.

It is well settled that "in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Liability under § 1983 therefore cannot be predicated on a theory of respondeat superior. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991) ("[S]upervisory officials

17

may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of respondeat superior."); *see also Alvarado v. Westchester County*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) ("Section 1983 liability cannot be predicated on a theory of respondeat superior . . . ." (italics omitted)).

The Second Circuit has articulated five ways a defendant may be personally involved in a constitutional violation:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  Though there is some doubt about the continuing vitality of these categories after the Supreme Court's decision in *Iqbal*, *see Grullon*, 720 F.3d at 139, the Court need not confront that issue here, as Plaintiff falls short even under the categories set forth in *Colon*.

Plaintiff has made no effort to allege the personal involvement of Koenigsmann or Hogan.  The entirety of Plaintiff's allegations against each Defendant is relayed below:

> Carl Koenigsmann—As the Chief Medical Staff for DOCCS, he has a responsibility under the 8th Amend[ment] of [the Constitution] to ensure that medical treatment is provided.  That which includes: [e]ffective pain meds, [occupational therapy,] and a glove/brace (as ordered by several ortho specialist[s]) to treat a severe neuropathy condition that resulted in dysfunction of the right hand.
>
> . . . .
>
> Michael Hogan—Chronic pain can and has in fact trigger[ed] mental health issues and those matters were not properly addressed through mental health services.

(Compl. at 21–23.)  These allegations do nothing more than establish that Koenigsmann and Hogan had supervisory authority over units of government that allegedly deprived Plaintiff of his constitutional rights.  Even if true, Plaintiff has failed to state a claim for supervisory liability under § 1983.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("Nor can [the defendant] be held personally responsible simply because he was in a high position of authority in the prison system."); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) ("The plaintiff's claim for monetary damages against these defendants requires a showing of more than the linkage in the prison chain of command; the doctrine of respondeat superior does not apply."); *McLennon v. City of New York*, 171 F. Supp. 3d 69, 101 (E.D.N.Y. 2016) ("A defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." (internal quotation marks omitted)).  Accordingly, Plaintiff's allegations against Koenigsmann and Hogan are insufficient to state a claim under § 1983.

Because the Court dismisses Plaintiff's claims under § 1983 on the merits, there is no occasion to consider whether qualified immunity attaches to Defendants.

### 4.  The Americans with Disabilities Act

Plaintiff has also brought claims against Defendants under the ADA.  There is good reason to question whether Plaintiff has stated a viable claim under the ADA.  For example, an incarcerated plaintiff asserting a claim under the ADA must allege that "he was denied the opportunity to participate in or benefit from [the prison administration's] services, programs, or activities or [the prison administration] otherwise discriminated against him by reason of his disability."  *Wright v. N.Y. State Dept. of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016); *see also Hallett v. N.Y. State Dept. of Corr. Servs.*, 109 F. Supp. 2d 190, 198 (S.D.N.Y. 2000) (holding that a plaintiff must allege that "he or she is being excluded from participation in, or being denied the

19

benefits of some service, program, or activity by reason of his or her disability").  It is not clear to the Court at this stage what "services, programs, or activities" Plaintiff was denied as a result of his alleged disability.  Moreover, some courts in the Second Circuit have held that an individual may not be held liable under the ADA, even when sued in his or her official capacity.  *See, e.g.*, *Carrasquill v. City of New York*, 324 F. Supp. 2d 428, 441 (S.D.N.Y. 2004) ("Individuals cannot be named as defendants in ADA suits in either their official or representative capacities."); *Hallett*, 109 F. Supp. 2d at 200 ("Because [a] plaintiff is able to assert his ADA . . . claims against [DOCCS] directly, . . . there is no justification for allowing [a] plaintiff to also assert ADA . . . claims against the individual defendants in their official capacities.").  *But see Cole v. Goord*, No. 05-CV-2902, 2009 WL 2601369, at *5 (S.D.N.Y. Aug. 25, 2009) ("[The plaintiff's] [ADA] claims for money damages will not . . . be dismissed on the grounds that he has named only individual defendants rather than expressly suing a 'public entity.'"); *Charles v. N.Y. State Dept. of Corr. Servs.*, No. 07-CV-1274, 2009 WL 890548, at *4 (N.D.N.Y. Mar. 31, 2009) ("[T]he ADA . . . claims may proceed as against the State and the individuals in their 'official capacity.'").  It also bears noting that the ADA claims that were not severed and transferred to other districts were dismissed sua sponte by Judge Scullin.  (*See* Mem. Decision & Order 24–25.)

Despite these issues, Defendants have not offered any arguments to support dismissal of the ADA claims that were transferred to this Court.  It is unclear whether this was a strategic move or simply an oversight.  Defendants have, after all, asked the Court to dismiss the Complaint "in its entirety."  (Defs.' Mem. 12.)  In such circumstances, and given Plaintiff's pro se status, the Court is not inclined to dismiss Plaintiff's ADA claims sua sponte without giving Plaintiff an opportunity to respond.  Defendants are therefore given leave to file supplemental

letter briefing, if they choose, presenting arguments as to why Plaintiff's ADA claims should be dismissed.

### 5.  Dismissal Without Prejudice

A complaint should be dismissed without prejudice if the pleading, "'liberally read,' suggests that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (alterations and citation omitted) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  If a complaint, however, has substantive problems and "[a] better pleading will not cure [them]," "[s]uch a futile request to replead should be denied." *Id.* (citing *Hunt v. All. N. Am. Gov't Income Tr.*, 159 F.3d 723, 728 (2d Cir. 1998)).  Even pro se plaintiffs are not entitled to file an amended complaint if the complaint "contains substantive problems such that an amended pleading would be futile." *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012), *aff'd*, 523 F. App'x 32 (2d Cir. 2013).

Here, Plaintiff has failed to state a claim against any of Defendants.  However, because it is possible that the deficiencies may be cured by amendment, the Court will permit Plaintiff an opportunity to amend his Complaint.  Plaintiff is advised that, at this time, his claims under the ADA have not been dismissed, but Defendants will have an opportunity to request dismissal of those claims even if Plaintiff chooses not to file an amended complaint.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion is granted in part, without prejudice. Plaintiff's § 1983 claims are dismissed without prejudice.  Plaintiff's ADA claims have not been dismissed.  The case will proceed as follows:

1) If Plaintiff wishes to revive his § 1983 claims, he may file an amended complaint within 30 days of the date of this Opinion & Order.

2) Within 30 days of the filing of such amended complaint, Defendants are to advise Plaintiff and the Court whether they wish to take limited discovery on the issue of exhaustion. If so, the Parties will have 60 days from the date Defendants notify the Court in which to conduct limited discovery. If, after discovery, Defendants wish to pursue a motion for summary judgment limited to the issue of exhaustion, they must confer with Plaintiff and file a letter with the Court setting forth a proposed briefing schedule. If Defendants wish to move to dismiss Plaintiff's amended complaint, such briefing should be consolidated with the motion for summary judgment.

3) If Plaintiff does not file an amended complaint, Defendants will have 60 days from the date of this Opinion & Order in which to file supplemental letter briefing, not to exceed 5 pages, explaining why Plaintiff's claims under the ADA should be dismissed for failure to state a claim. Plaintiff will have 30 days to respond via a letter not to exceed 5 pages. No reply from Defendants will be accepted.

SO ORDERED.

DATED:     February ⌐, 2017
               White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

22